# 14-3739(L),
# 15-651(CON), 15-1057(CON)

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

v.

RUBEN FERNANDEZ, AKA Pops, RICHARD PALMER, AKA P.O., AKA
P.O.P., PEDRO MARQUEZ, AKA Burns, AKA Bern, ANDREA ISAROON, AKA
Chaz, DENNIS FREDERICKS, AKA Ice, CLAYTON MOLLETTE, AKA Killer,
AKA Clay, STEVEN HERBERT, AKA Atta, SHUNDU DAVIS, AKA Davis
Shundu, JAMES MARTIN, DEXTER ERBY, AKA Addi, AKA Dida, YOUSSOUF
DIOMADE, MOUSTAPHA GUEYE, KHALILAH MATTOCKS, AKA Lils, JOSE
CAPRIATA, GEORGE DAVIS, AKA Chee Chee, KEITH PURVIS, AKA Kiz,

*Defendants,*

AISHA BABILONIA, RUBEN DAVIS, AKA Bloddy Ruben, AKA Fat Man,
AKA Fat Boy, ROGER KEY, AKA Sealed Defendant 1, AKA Luchie,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## DEFENDANT-APPELLANT AISHA BABILONIA

ROBERT WILLIAM RAY
FOX ROTHSCHILD LLP
*Attorneys for Defendant-Appellant
   Aisha Babilonia*
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7900

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

JURISDICTIONAL STATEMENT ....................................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................................... 2

STATEMENT OF THE CASE................................................................................. 2

SUMMARY OF ARGUMENT ............................................................................... 3

STATEMENT OF FACTS ....................................................................................... 4

    A.    The Underlying Facts ........................................................................... 4

    B.    The Prior Indictment ............................................................................ 7

    C.    The Plea Agreement and Guilty Plea to the Information ..................... 8

          i.    Guilty Pleas of Fifteen Original Co-Defendants ......................... 10

          ii.    Conviction Following Trial of Roger Key ................................... 13

    D.    The Presentence Report ...................................................................... 14

    E.    Pre-Sentence Order Noticing Court's Intention to Depart Upward from Guidelines ..................................................................................... 15

    F.    Sentencing ........................................................................................... 16

          i.    Appellant's Sentencing Memorandum ........................................ 16

          ii.    The Government's Sentencing Memorandum ............................. 17

          iii.    Sentencing Hearing...................................................................... 18

    G.    The Appeal........................................................................................... 19

ACTIVE 29666865v3 04/14/2015

ARGUMENT ...........................................................................................20

I.    The District Court Abused Its Discretion in
Erroneously Departing Upward from the Stipulated Range under the
Sentencing Guidelines Resulting in a Procedurally Unreasonable
Sentence ........................................................................................20

    A.    Standard of Review ................................................................20

    B.    The District Court Failed to State Specific Reasons Sufficient
to Justify its Significant Upward Departure at Sentencing ......22

    C.    Absent a Clear Record Basis for the District Court's Upward
Departure, this Court Must, at a Minimum, Remand for
Resentencing ..........................................................................24

        i.    Pre-Sentence Report................................................25

        ii.    The Superseding Information ..................................27

        iii.    Evidence from Trial of Co-Defendant Roger Key .28

II.    Appellant's Sentence Should Be Vacated as Unreasonable and the
Case Remanded for Re-Sentencing Due to the District Court's
Erroneous Denial of an Evidentiary Hearing Regarding Contested
Facts in the PSR ...........................................................................30

    A.    Standard of Review ................................................................30

    B.    The District Court Improperly Denied Appellant's Request
for a *Fatico* Hearing................................................................32

III.    The District Court Failed to Properly Consider Mitigating Factors
Presented by Appellant at Sentencing Resulting in a Substantively
Unreasonable Sentence ..................................................................33

    A.    Standard of Review ................................................................33

    B.    The District Court Effectively Ignored Duress Evidence in
Mitigation...............................................................................35

CONCLUSION ......................................................................................41

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gall v. United States,*
    552 U.S. 38 (2007)............................................................20, 21, 22, 33

*Kimbrough v. United States,*
    552 U.S. 85 (2007)............................................................20

*Rita v. United States,*
    551 U.S. 338 (2007)..........................................................21, 22

*United States v. Booker,*
    543 U.S. 220 (2005)..........................................................20, 22

*United States v. Campbell,*
    967 F.2d 20 (2d Cir. 1992) ................................................34, 39

*United States v. Cossey,*
    632 F.3d 82 (2d Cir. 2011) ...............................................20, 24, 30, 35

*United States v. Crosby,*
    397 F.3d 103 (2d Cir. 2005) .............................................22

*United States v. Deutsch,*
    987 F.2d 878 (2d Cir. 1993) .............................................34

*United States v. Dorvee,*
    616 F.3d 174 (2d Cir. 2010) .............................................33, 34

*United States v. Fairclough,*
    439 F.3d 76 (2d Cir. 2006) ...............................................34

*United States v. Garcia,*
    900 F.2d 571 (2d Cir. 1990) .............................................31

*United States v. Hsu,*
    669 F.3d 112 (2d Cir. 2012) .............................................21

*United States v. Johnson,*
    567 F.3d 40 (2d Cir. 2009) ...............................................20

*United States v. Joyner*,
924 F.2d 454 (2d Cir. 1991) ................................................................23

*United States v. Juwa*,
508 F.3d 694 (2d Cir. 2007) .........................................24, 25, 29, 30

*United States v. Khalil*,
214 F.3d 111 (2d Cir. 2000) ........................................34, 35, 36

*United States v. Kim*,
896 F.2d 678 (2d Cir. 1990) ................................................................39

*United States v. Morehead*,
375 F.3d 677 (8th Cir. 2004) ................................................................30

*United States v. Palta*,
880 F.2d 636 (2d Cir. 1989) ................................................................23

*United States v. Pergola*,
930 F.2d 216 (2d Cir. 1991) ................................................................39

*United States v. Rodriguez-Gonzalez*,
899 F.2d 177 (2d Cir. 1990) ................................................................30

*United States v. Romano*,
825 F.2d 725 (2d Cir. 1987) ................................................................30

*United States v. Simmons*,
501 F.3d 620 (6th Cir. 2007) ................................................................23

*United States v. Thorn*,
446 F.3d 378 (2d Cir. 2006) ................................................................23

*United States v. Tropiano*,
50 F.3d 157 (2d Cir. 1995) ................................................................34

*United States v. Williams*,
37 F.3d 82 (2d Cir. 1994) .........................................22, 34

*United States v. Williamsburg Check Cashing Corp.*,
905 F.2d 25 (2d Cir. 1990) ................................................................31

iv

*Williams v. United States*,
   503 U.S. 193 (1992)................................................................34

**Statutes**

18 U.S.C. § 371 ................................................................1, 2, 8, 13, 18

18 U.S.C. § 924(c) ................................................................10

18 U.S.C § 924(c)(1)(a)(iii) ................................................................13

18 U.S.C. § 1958 ................................................................7

18 U.S.C. § 2261A ................................................................1, 2, 8, 9, 27

18 U.S.C. § 2261A(i) ................................................................27

18 U.S.C. § 3231 ................................................................1

18 U.S.C. § 3553(a) ................................................................*passim*

18 U.S.C. § 3553(a)(1) ................................................................33

18 U.S.C. § 3553(a)(1) & (2)(A) ................................................................24

18 U.S.C. § 3553(a)(2) ................................................................33

18 U.S.C. § 3553(a)(2)(D) ................................................................38

18 U.S.C. § 3553(a)(4) ................................................................33

18 U.S.C. § 3553(a)(5) ................................................................33

18 U.S.C. § 3553(a)(6) ................................................................23, 33

18 U.S.C.§ 3553(b) ................................................................3, 21

18 U.S.C. § 3553(b)(1) ................................................................2

18 U.S.C. § 3553(c) ................................................................22, 23

18 U.S.C. § 3553(c)(2) ................................................................22

18 U.S.C. § 3661 ................................................................30

21 U.S.C. § 843(b) ...........................................................................................11

21 U.S.C. § 846 ...............................................................................10, 11, 12

28 U.S.C § 994 .................................................................................................39

28 U.S.C. § 1291 ................................................................................................1

U.S.S.G. § 1A.4(b) ..........................................................................................23

U.S.S.G. § 1B1.1(b) .........................................................................................21

U.S.S.G. § 3B1.2(b) .........................................................................................14

U.S.S.G. § 5G1.3(d) .........................................................................................13

U.S.S.G. § 5K2.0(a) .........................................................................................23

U.S.S.G. § 5K2.0(e) .........................................................................................22

U.S.S.G. § 5K2.12 ...............................................................................16, 37, 38

U.S.S.G. § 5K2.21 .....................................................................................15, 16

U.S.S.G. § 5K2.21(1) .......................................................................................37

U.S.S.G. § 6A1.3 ..............................................................................................31

## Other Authorities

Fed. R. Crim. P. 32(c)(3)(D) ......................................................................30, 31

## JURISDICTIONAL STATEMENT

Defendant-Appellant Aisha Babilonia ("Babilonia" or "Appellant") appeals from a judgment of conviction entered on September 22, 2014 by the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*) following a guilty plea to a superseding Information, (S10) 12 Cr. 712 (SHS) (the "Information"), charging her under 18 U.S.C. § 371 with conspiracy to violate the federal stalking statute, 18 U.S.C. § 2261A. (A. 32).[1]  On February 28, 2014, Babilonia pleaded guilty to Count One of the Information, specifically, that Appellant "conspired and agreed to travel between New Jersey and New York with the intent to harass or to place under surveillance with intent to harass or intimidate an individual (the 'Victim') and place the Victim in reasonable fear of death or serious bodily injury, or cause substantial emotional distress to the Victim, in violation of 18 U.S.C. § 2261A." (A. 32).

At sentencing on September 8, 2014, the district court imposed a term of sixty (60) months' imprisonment  –  the statutory maximum  –  which constituted an upward departure from the recommended 30-37 months' sentencing range calculated under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."). A notice of appeal was timely filed on October 3, 2014. (A. 360).

---

[1] Documents in the Special Appendix will be cited as "SPA." and the corresponding page number. Documents in the Appendix will be cited as "A." and the corresponding page number.

1

Jurisdiction in the district court was conferred by 18 U.S.C. § 3231.

Appellate jurisdiction is invoked pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the district court abused its discretion in departing upward,

pursuant to 18 U.S.C. § 3553(b)(1), from the recommended Guidelines range in

imposing sentence against Appellant.

2.     Whether the district court erred in considering uncharged conduct,

*i.e.*, an alleged murder-for-hire, among the sentencing factors in imposing sentence

against Appellant without holding an evidentiary hearing, which therefore violated

Appellant's Fifth Amendment right to due process.

3.     Whether the district court's sentencing enhancement based on the

alleged murder-for-hire, to which Appellant neither admitted nor stipulated when

she pleaded guilty, unreasonably resulted in a sentence at the statutory maximum,

after consideration of the statutory factors under 18 U.S.C. § 3553(a), that was

"greater than necessary" in light of substantial mitigating evidence of the "history

and characteristics" and violent domestic abuse suffered by Appellant.

## STATEMENT OF THE CASE

Appellant Aisha Babilonia was convicted in the United States District Court

for the Southern District of New York before the Honorable Sidney H. Stein

following a guilty plea to a single count Information, charging her under 18 U.S.C.

2

§ 371 with conspiracy to commit a stalking offense, in violation of 18 U.S.C §

2261A. (SPA. 1). Babilonia was sentenced to sixty (60) months' imprisonment.

(SPA. 2). She was further sentenced to three years of supervised release, serving

160 hours of community service during each of those three years, ordered to

participate in a mental health program approved by the U.S. Probation Office, and

required to pay the mandatory $100 special assessment. (SPA. 3-6). Babilonia

currently is serving her sentence.

## SUMMARY OF THE ARGUMENT

Appellant challenges her conviction and sentence on three separate grounds:

First, Appellant contends that the district court abused its discretion in

imposing sentence against her that departed upward under 18 U.S.C. § 3553(b)

from the recommended Guidelines range;

Second, Appellant contends that the district court erred in considering

disputed uncharged conduct, *i.e.*, an alleged murder-for-hire, without holding an

evidentiary hearing, which violated Appellant's Fifth Amendment rights; and

Third, Appellant contends that the district did not give proper consideration

to the 18 U.S.C. § 3553(a) factors.

3

## STATEMENT OF FACTS

### A.    The Underlying Facts

Defendant-Appellant Aisha Babilonia, a thirty-eight year old registered nurse, has lived a life marred by chronic physical abuse.  She appeals her sentence after having pleaded guilty to a conspiracy to travel between New Jersey and New York to stalk Matthew Allen, with the intent to harass and intimidate him. Babilonia has no prior criminal convictions, and accordingly, the U.S. Probation Office placed her in Criminal History Category I.  (PSR[2] ¶ 3).

Matthew Allen, a notorious and violent drug dealer, had been Babilonia's boyfriend since she was approximately age 16.  (Expert Report  at 20).[3]  For over two decades, Babilonia suffered grave abuse at the hands of Matthew Allen including but not limited to the following instances:  Allen beat Appellant Babilonia with a piece of plywood until she passed out; Appellant sought shelter in Safe Horizons in the Bronx; Babilonia applied for, and was granted, a restraining order from Allen after he repeatedly punched her in the face and beat her with a belt over her face and body; and, once when leaving her mother's house, Allen kidnapped Babilonia, and forced her into his car where he punched her until she lost consciousness.  Babilonia further recalled waking up in her home in New

---

[2] The final Presentence Report, dated September 22, 2014, is cited as "PSR".
[3] The Expert Report prepared by Dr. Simone Gordon, dated July 24, 2014, which is filed under seal in this Court, is cited as "Expert Report".

Jersey and thereafter being raped by Matthew Allen. (Expert Report at 33, 3, 27, 30).

Babilonia took several steps to try and protect herself from the foregoing domestic violence, evidenced by her filing a restraining order; filing various domestic violence complaints with New York and New Jersey law enforcement authorities; and also by her participation in counseling through her employer's Employee Assistance Program from 2005 – 2008. (Expert Report at 26, 27, 30). Her efforts proved futile, and Matthew Allen continued to beat and endanger her despite her attempts to escape his abuse. This chronic situation[4] sets the backdrop for Babilonia's desperate decision to enter into a conspiracy with Roger Key to stalk Matthew Allen, with the intent to harass and intimidate him.

Appellant became acquainted with co-defendant Roger Key while Matthew Allen was incarcerated. (Export Report at 32). Babilonia and Key initially met in a social setting and began a personal relationship. Key quickly gained her trust and affection through the simplicity of his kindness towards her, and because he never

_____

[4] Matthew Allen is not the first to have abused Aisha Babilonia. Growing up, Babilonia was exposed to incessant domestic violence and drug related activity while living in her godparents' household, where she was raised instead of by her mother, who lived in Panama, and father who was a drug dealer in and out of jail on narcotics trafficking charges. At home, Appellant was often abused with a leather belt and deprived of basic necessities. When she was just eight years old, and in the building where she lived, Aisha Babilonia was sexually molested. (Expert Report at 7-9, 11, 12).

physically abused her. Nonetheless, once Allen was released from jail, Babilonia retreated to him once again, and even conceded to marrying him. The two were married in a private ceremony on December 2, 2011, three days before Allen's murder. (Expert Report at 36).

Tormented in her relationship with Allen, Babilonia took pictures of her bruises after being beaten by Allen. Babilonia sent photographs of her bruises to close friends via cell phone, including Roger Key. (Expert Report at 33; PSR ¶ 24; A. 327). She sent these pictures and other text messages to recipients, including Key, oddly asking them to remind her of what she was experiencing, and to keep her strong. (A. 327).

In addition to sending pictures of the bruises inflicted on her by Matthew Allen to Roger Key, Babilonia also sent at Key's request a picture of Matthew Allen. (PSR ¶ 25). In a text message, Key called the picture of Allen his "homework." *Id*. Without the knowledge or participation of Appellant, Key unilaterally solicited the aid of Jiya Canady to kill Matthew Allen in exchange for $10,000 cash. (PSR ¶ 26). Canady arranged for Jose Capriata to be the shooter. (PSR ¶ 29).

On November 16, 2011, Jose Capriata's attempt to kill Matthew Allen resulted in the non-fatal shooting of an innocent bystander (and therefore unintended victim) in Brooklyn, New York. (A. 62). A superseding Indictment

charged Key, Canady, and Capriata with conspiracy to commit the murder-for-hire of Matthew Allen and attempted murder-for-hire. (A. 13).

Prior to the November 16, 2011 incident, Appellant brought Allen's vehicle to the Bronx. (A. 26; A. 346; A. 348). At some point thereafter, without Appellant's knowledge or participation, Roger Key's co-conspirators affixed a GPS tracking device to Allen's SUV, while she remained seated in the driver's seat of the vehicle. *Id*.

On December 5, 2011, Matthew Allen was shot and killed. (PSR, Justification). The Government's investigation into the murder of Matthew Allen is ongoing. *Id*. The Government has yet to charge anyone for the murder of Allen; his murder remains unsolved. *Id*.

## B.    The Prior Indictment

Defendant Babilonia was originally charged together with Roger Key and one other individual with murder-for-hire conspiracy in Count Three of Superseding Indictment (S8) 12 Cr. 712, filed February 11, 2014, as well as attempted murder-for-hire, as charged in Count Four, all in violation of 18 U.S.C. § 1958. (A. 11). As to those charges against her, for which she faced a maximum possible sentence of 20 years as the result of personal injury suffered by a victim, the (S8) and (S9) Superseding Indictments did not differ in any material respects from the prior (S4) and (S5) Superseding Indictments, the former of which was

returned shortly before Defendant-Appellant's arrest on October 29, 2013.  (A.11;

A. 22).  The underlying (S4) Indictment originally charged a total of nineteen

defendants, including Babilnoia.  Babilonia has remained in custody since her 2013

arrest.

### C.    The Plea Agreement and Guilty Plea to the Information

According to the terms of a plea agreement, dated February 26, 2014, the

Government (in exchange for her guilty plea as described below) agreed to dismiss

at sentencing the open murder-for-hire conspiracy and substantive attempted

murder-for-hire open charges against Appellant.  (A. 26 ).  Pointedly distinct from

the charges alleged in the underlying superseding Indictment, the Government

instead agreed to accept a guilty plea to a superseding Information, charging her

with conspiracy under 18 U.S.C. § 371, which carries a statutory maximum

sentence of five years' (or 60 months') imprisonment.  (*Id*.; A. 32).  The charged

object of the conspiracy was a violation of the federal stalking statute, 18 U.S.C. §

2261A.  (A. 32).  The recommended and stipulated sentencing range contained in

the plea agreement was 24-37 months' imprisonment.  (A. 28)  Significantly, both

parties stipulated in the plea agreement that "neither a downward nor an *upward*

*departure* from the Stipulated Guidelines Range … is warranted."  (A. 28, Part C ¶

2) (emphasis added).

Babilonia now brings this sentencing appeal having pleaded guilty only to participation in a conspiracy to stalk Matthew Allen, with the intent to harass and intimidate him. (A. 60).

During the plea proceeding on February 28, 2014, the district court asked Babilonia to state what she did in connection with the crime to which she was entering a plea of guilty, that is, the offense of conviction alleged in the superseding Information. (A. 60). Defendant-Appellant answered, as follows:

> In October 2011, I traveled between New Jersey and the Bronx to meet with a co-conspirator. On October 27th, I sent a picture … to a co-conspirator. I did that with the intent to harass and intimidate the victim. And that picture was sent via cell phone.

(A. 60). The court then inquired further:

> THE COURT: Did the person on the other end, that is, the person you sent the picture to, know why you were sending it to him?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you have an agreement with him prior to sending it to him?
>
> THE DEFENDANT: Yes.

Id. That colloquy was the full extent of the Appellant's allocution before the district court concerning her culpability and acknowledged involvement in the charged conspiracy to commit a stalking offense.

### i.     Guilty Pleas of Fifteen Original Co-Defendants

On July 29, 2013, Ruben Fernandez pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846.  Fernandez was sentenced to 120 months' imprisonment followed by 4 years' supervised release.  (PSR ¶ 5).

On August 2, 2013, Steven Herbert pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846.  Herbert was sentenced to 65 months' imprisonment followed by 3 years' supervised release.  (PSR ¶ 6).

On August 26, 2013, James Martin pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846.  Martin was sentenced to 18 months' imprisonment followed by 3 years' supervised release.  (PSR ¶ 7).

On October 1, 2013, Ruben Davis pleaded guilty to Counts 1 and 2 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846, and possession of a firearm in relation to a narcotics trafficking offense, in violation of 18 U.S.C. § 924(c).  Davis was sentenced to 228 months' imprisonment followed by 5 years' supervised release.  Davis filed a notice of appeal (**Dkt. No. 15-651**; consolidated with this appeal) on March 2, 2015.  (PSR ¶ 8).

On October 4, 2013, Shundu Davis pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Davis was sentenced to 120 months' imprisonment followed by 4 years' supervised release. (PSR ¶ 9).

On October 8, 2013, Clayton Mollette pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Mollette was sentenced to 65 months' imprisonment, followed by 3 years' supervised release. (PSR ¶ 10).

On October 15, 2013, Dexter Erby pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Erby was sentenced to 57 months' imprisonment followed by 3 years' supervised release. (PSR ¶ 11).

On October 17, 2013, Richard Palmer pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Palmer was sentenced to 120 months' imprisonment followed by 4 years supervised. (PSR ¶ 12).

On October 23, 2013, Khaliah Mattocks pleaded guilty to Count 1 of (S3) 12 Cr. 712 (SHS), charging use of a communication facility to facilitate the commission of a drug offense, in violation of 21 U.S.C. § 843(b). Mattocks was sentenced to 3 years' probation. (PSR ¶ 13).

On October 25, 2013, Keith Purvis pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Purvis was sentenced to 120 months' imprisonment followed by 3 years' supervised release. (PSR ¶ 14).

On October 28, 2013, Andrea Isaroon pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Isaroon was sentenced to 20 months' imprisonment followed by 3 years' supervised release. (PSR ¶ 15).

On November 1, 2013, Pedro Marquez pleaded guilty to Count 1 of (S2) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Marquez was sentenced to 120 months' imprisonment followed by 4 years' supervised release. (PSR ¶ 16).

On November 6, 2013, George Davis pleaded guilty to Count 1 of (S4) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. § 846. Davis was sentenced to 60 months' imprisonment followed by 3 years' supervised release. (PSR ¶ 17).

On November 11, 2013, Dennis Fredericks pleaded guilty to Count 1 of (S5) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to

distribute cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. § 846. (PSR ¶ 18). Sentence has yet to be imposed on Fredericks.

On March 10, 2014, the shooter, Jose Capriata, pleaded guilty to Counts 1 and 2 of (S11) 12 Cr. 712 (SHS), charging conspiracy to commit murder-for-hire and possession of a firearm, respectively, in violation of 18 U.S.C. § 371 and 18 U.S.C § 924(c)(1)(a)(iii). (PSR ¶ 19). Capriata was sentenced to 60 months on Count 1 and 120 months on Count 2 to run consecutively, for a total of 180 months' imprisonment consecutive to Capriata's undischarged New York State sentence pursuant to U.S.S.G. § 5G1.3(d), followed by 3 years' supervised release.

The Government filed *nolle prosequies* dismissing all charges against defendants Youssouf Diomade and Moustapha Gueye. (PSR ¶ 21-22).

### ii.  Conviction Following Trial of Roger Key

Significantly as relevant to the instant appeal, on April 2, 2014, Roger Key was convicted following a 12-day jury trial on Counts 1 through 6 of Indictment (S9) 12 Cr. 712 (SHS), charging conspiracy to distribute and possess with intent to distribute crack cocaine; possession, use and discharge of a firearm (2 counts); murder-for-hire; attempted murder for hire; and conspiracy to commit murder-for-hire. On March 26, 2015, Key was sentenced to life imprisonment plus 30 years followed by 10 years' supervised release. (PSR ¶ 20). Key filed a notice of appeal (**Dkt. No. 15-1057**; consolidated with this appeal) on April 6, 2015.

### D.    The Presentence Report

Both the Probation Office and the parties agreed that Babilonia's criminal history category was I.  (PSR ¶ 3; A. 348).  Furthermore, the PSR and plea agreement both conclude that the applicable offense level under the Guidelines for the offense was to be level 17, if the district court were to find that Appellant qualified for the application of a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2(b); or level 19, if the court were to find that a mitigating role adjustment did not apply.  (A. 348; PSR ¶ 21).

At offense level 17, Appellant's recommended sentence fell within the Guidelines range of 24 to 30 months' imprisonment.  (PSR ¶ 3).  At offense level 19, Appellant's recommended sentence fell within the Guidelines range of 30 to 37 months' imprisonment. (PSR ¶ 3; A. 348).  The plea agreement accordingly provided a stipulated guidelines range for Appellant of 24 to 37 months' imprisonment.

The final PSR (which contained a sentencing recommendation) fixed the Guidelines range for Appellant at offense level 19, or 30 to 37 months' imprisonment; but then, contrary to the recommendation contained in the plea agreement and what was reflected in the draft PSR[5]— and apparently echoing the

---

[5] The draft PSR, dated June 4, 2014, provided that "[t]he probation officer has not identified any factors that would warrant a departure from the applicable

district court's intention to depart upward from the Guidelines – the final PSR

ultimately recommended an upward departure to the statutory maximum of 60

months' imprisonment.  (PSR at p. 21).

The PSR explained that the recommended sentence of 60 months'

imprisonment was made, under 18 U.S.C. § 3553(a), in light of the nature and

circumstances of the offense.  *Id*.  The justification section of the report reasoned

that there was no question that despite pleading guilty to a stalking charge,

Babilonia played a significant role in the plot to murder Matthew Allen.  However,

the PSR also incorrectly attributed involvement by Babilonia in the death of

Matthew Allen, despite the fact that this homicide remains unsolved and the

investigation into the circumstances of his death remains ongoing.  (PSR at pp. 21-

22).

### E. Pre-Sentence Order Noticing Court's Intention to Depart Upward from Guidelines

On April 3, 2014 (the day after the Roger Key trial concluded, and at which

Judge Stein presided), the district court issued an order advising the parties of the

court's intention to consider imposing an upward departure from the Guidelines,

pursuant to U.S.S.G. § 5K2.21 (Policy Statement).  (A. 65).  The district court

---

sentencing guideline range."  (Draft PSR ¶ 92).  The draft PSR further indicated
that "[t]he Probation officer has not identified any factors that would warrant a
sentence outside the applicable sentencing guideline range."  (*Id*. ¶ 93).

instructed the Government to provide, in a subsequent filed submission, any

evidence it possessed of Babilonia's intent to kill, injure, harass or intimidate

Matthew Allen, as charged in the Superseding Information, filed February 28,

2014. *Id*.

The Government submitted a response to the Court's order, dated April 25,

2014, in which the Government cited testimony of cooperating witness Jiya

Canady from the March 2014 trial of co-defendant Roger Key, telephone records

and cellsite location maps for cellphones being used by Canady, Roger Key and

Appellant at or around the date of the attempted murder of Matthew Allen, and a

photograph of Allen sent by Babilonia via text message to Key. (A. 67).

## F. Sentencing

### i. Appellant's Sentencing Memorandum

Prior to her sentencing, Babilonia submitted a memorandum acknowledging

the district court's authority to consider dismissed or uncharged conduct as

grounds for an upward departure, but that the court should not do so in all fairness

unless it also considered that "the defendant committed the offense because of

serious … duress, under circumstances not amounting to a complete defense." (A.

245); *cf*. U.S.S.G. § 5K2.12 (Policy Statement). An expert mitigation examination

was conducted by Dr. Simone Gordon and her report was included as an exhibit to

the defendant's sentencing memorandum and filed under seal. Dr. Gordon's report

exhaustively chronicled the traumatic impact of the prolonged domestic violence abuse that Appellant suffered at the hands of Matthew Allen.  (Expert Report filed under seal herein on this appeal).

Appellant also challenged the basis for an upward departure on the ground that the Government lacked substantial evidence of her alleged participation in the murder-for-hire scheme.  Appellant further highlighted for the sentencing court the disparate nature of the charges of conspiracy to commit stalking from conspiracy to commit murder-for-hire when making its evaluation of the sentencing factors under 18 U.S.C. § 3553(a).  (A. 247).

### ii.    The Government's Sentencing Memorandum

Prior to sentencing, the Government submitted a sentencing memorandum, dated August 19, 2014, setting forth the basis for its recommendation that the Court grant an upward departure at sentencing, notwithstanding its stipulation contained in the plea agreement to a sentencing range and recommendation of 30-37 months imprisonment.[6]  (A. 28; A. 243).  The Government argued that 60

---

[6] The Government's subsequent recommendation endorsing the district court's intention to depart upward from the Guidelines did not constitute a violation of the terms of the plea agreement because the agreement also provides that the Government may respond to the court if the sentencing judge declines to follow the sentencing recommendation and *sua sponte* signals an intention to depart upward from the Guidelines.  (A. 26).

months' imprisonment would be "sufficient, but not greater than necessary" to serve the legitimate purposes of sentencing.  (A. 243); *see* 18 U.S.C. § 3553(a).

### iii.    Sentencing Hearing

At the sentencing hearing held on September 8, 2014, the district court rejected substantial reliance on Appellant's mitigation submission.  Judge Stein reasoned that although "Ms. Babilonia's suffered substantial and sustained physical and mental abuse by Allen over a significant period of time," which the sentencing court did take "into consideration," the abuse that Babilonia suffered at the hands of Matthew Allen did not "excuse *her participation* in a plan to bring about his death."  (A. 354) (emphasis added).

The district court found Babilonia's total offense level to be 19, and given her criminal history category of I, the applicable guideline range was calculated by the court to be 30-37 months' imprisonment.  *Id*.  Nevertheless, Judge Stein *sua sponte* departed upward from the recommended and stipulated sentencing range—in fact, the court effectively doubled the sentence from the bottom of that range—and sentenced Ms. Babilonia to 60 months' imprisonment, the statutory maximum allowable under 18 U.S.C. § 371.  *Id*.

Babilonia was further sentenced to three years of supervised release, 160 hours of community service annually for each of those years, ordered to participate

in a mental health program approved by the U.S. Probation Office, and ordered to pay the mandatory $100 special assessment.  (SPA at 2-3, 5).

### G.  The Appeal

On October 3, 2014, Babilonia filed a timely notice of appeal of the September 22, 2014 judgment of conviction and sentence against her.  (A. 360).

## ARGUMENT

## POINT I

**The District Court Abused Its Discretion in
Erroneously Departing Upward from the Stipulated Range under the
Sentencing Guidelines Resulting in a Procedurally Unreasonable Sentence**

### A.    Standard of Review

This Court ultimately reviews on appeal all sentences imposed for

reasonableness.  *Kimbrough v. United States*, 552 U.S. 85, 90-91 (2007); *United

States v. Booker*, 543 U.S. 220, 260-62 (2005); *United States v. Cossey*, 632 F.3d

82, 86 (2d Cir. 2011).  This reasonableness review is akin to a "deferential abuse-

of-discretion standard," *Gall v. United States*, 552 U.S. 38, 52 (2007), and involves

both "an examination of the length of the sentence (substantive reasonableness) as

well as the procedure employed in arriving at the sentence (procedural

reasonableness)."  *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009).

Procedural error occurs when a district court:  "(1) fails to calculate the Guidelines

range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines range

as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5)

makes clearly erroneous factual findings; (6) does not adequately explain the

sentence imposed; or (7) deviates from the Guidelines range without explanation."

*Id.* at 51.  This Court reviews a district court's factual findings for clear error and

its application of the guidelines *de novo*.  *See United States v. Hsu*, 669 F.3d 112,

120 (2d Cir. 2012).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49. The sentencing court must then consider the Sentencing Commission departure policy statements as well as arguments by either the Government or the defense that the guidelines sentence should not apply and determine whether to impose a departure outside the guidelines range. *See Rita v. United States*, 551 U.S. 338, 351 (2007); *see also* U.S.S.G. § 1B1.1(b); 18 U.S.C. § 3553(b). The district court, in "an atypical case," may depart from the applicable guideline range based on a specialized finding of either an aggravating or mitigating circumstance. *See* U.S.S.G. §§ 1A.4(b), 5K2.0(a)(1)(A). The court must consider all of the section 3553(a) factors and then "make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 49-50. Finally, "[a]fter settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

An upward departure from the applicable Guidelines range is permissible only if there exists an "aggravating … circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). "Although the Guidelines afford the district court flexibility in sentencing, the power to depart is to be used sparingly and is reserved for unusual

cases." *United States v. Williams*, 37 F.3d 82, 85 (2d Cir. 1994). The Supreme

Court, since *Booker*, has repeatedly cautioned against unexplained or unwarranted

departures:

> [A] district judge must give serious consideration to the extent of any
> departure from the Guidelines and must explain his conclusion that an
> unusually harsh sentence is appropriate in a particular case with
> sufficient justifications. For even though the Guidelines are advisory
> rather than mandatory, they are, as we pointed out in *Rita*, the product
> of careful study based on extensive empirical evidence derived from
> the review of thousands of individual sentencing decisions.

*Gall*, 552 U.S. at 46, *citing Rita*, 551 U.S. at 349.

## B. The District Court Failed to State Specific Reasons Sufficient to Justify its Significant Upward Departure at Sentencing

Under 18 U.S.C. § 3553(c), the district court is required, "at the time of

sentencing, [to] state in open court the reasons for its imposition of a particular

sentence"; and where, as here, the sentence constitutes an upward departure and

therefore falls outside of the guidelines range, the court must state its reasons on

the record "with specificity." 18 U.S.C. § 3553(c)(2); U.S.S.G. § 5K2.0(e); *see*

*United States v. Crosby*, 397 F.3d 103, 116 (2d Cir. 2005) (noting that "the

Supreme Court [in *Booker*] left unimpaired section 3553(c)"). This Court has

"stress[ed] the importance of the District Court's obligation under 18 U.S.C. §

3553(c) to explain the reasons supporting the sentence imposed which, among

other things, aids this Court's review." *United States v. Thorn*, 446 F.3d 378, 394

(2d Cir. 2006). "Moreover, by disregarding the guidelines without sufficient

22

reason, the district court's action belies the Act's basic goal of eliminating unwarranted sentencing disparity in the federal courts."[7] *United States v. Palta*, 880 F.2d 636, 640 (2d Cir. 1989).

Here, however, the district court failed to fulfill its obligation under section 3553(c) and did not state with specificity (i) why it was necessary in this case to depart from the guideline range determined by the Sentencing Commission; or (ii) what aggravating circumstances existed here, "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that … should result in a sentence difference from that described." *See* U.S.S.G. § 5K2.0(a)(2) & (3). As the Sentencing Commission itself cautions, departures should only result in an "atypical case," lying outside the "heartland" of cases concerning the conduct considered in the Guidelines. *See* U.S.S.G. § 1A.4(b). The district court, here, failed to state with specificity the reasons for its determination that "an upward departure is appropriate in this case," or that "the nature, circumstances, and seriousness of the offense as set forth by the evidence and the reasonable inferences drawn from that evidence are not reflected in the

---

[7] As this Court has emphasized, one of the fundamental purposes of the Sentencing Guidelines is the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6); *United States v. Joyner*, 924 F.2d 454, 460 (2d Cir. 1991) (Congressional objective was "to eliminate unwarranted disparities nationwide"); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) (citing cases from majority of circuits).

sentencing guidelines range of 30 to 37 months imprisonment." (A. 351, 352).

Accordingly, Appellant's sentence of 60 months must be vacated as procedurally

unreasonable.

### C. Absent a Clear Record Basis for the District Court's Upward Departure, this Court Must, at a Minimum, Remand for Resentencing

This Court has held that where "it is insufficiently clear whether the district

court based its sentence on charged conduct that had neither been sufficiently

established nor admitted to by the defendant … [t]he confusion surrounding the

basis for the district court's determination rendered the sentence procedurally

unreasonable." *Juwa*, 508 F.3d at 700; *accord Cossey*, 632 F.3d at 89. Although

in this case the district court stated that the "nature" and "seriousness" of the

Appellant's offense compelled the court's upward departure from the Guidelines

range (A. 371); *see* 18 U.S.C. § 3553(a)(1) & (2)(A), the factual basis on which

Judge Stein relied in making this conclusion is unclear. The court did, however,

reference or allude to a number of potential sources for the court's decision,

including the sentencing recommendation in the PSR, the Superseding Information

to which Appellant had pleaded guilty, and the statutory language contained in the

federal criminal stalking statute. Nevertheless, even had the court clearly stated

which one of these factors was the factual and evidentiary basis for the court's

sentencing decision, it was still insufficient to justify the court's imposition of an

upward departure to Appellant's sentence. *See Juwa*, 508 F.3d at 701 ("facts

relevant to sentencing must be found by a preponderance of the evidence") (citing

cases).

### i.     Pre-Sentence Report

The district court, at sentencing, explicitly "adopt[ed] the findings of fact in

the presentence report" (A. 346), despite Appellant's objections to the multiple

unsubstantiated factual findings and dubious inferences contained in the PSR.

First, the PSR mistakenly attributed involvement by Babilonia in the *actual* murder

of Allen notwithstanding the fact that the Government never claimed that to be so,

and also that Allen's murder remains unsolved. (PSR at pp. 21-22). In the PSR's

"justification" for its sentencing recommendation of the statutory maximum

sentence, the Probation Office erroneously stated that "[a]ccording to information

provided by the Government … Babilonia's boyfriend, Matthew Allen, was killed

with the assistance of Roger Key, with whom she also was romantically involved,"

and that "[u]ltimately, the plot proved successful as Allen was shot and killed in

2011." (PSR at p. 21). Not only were these allegations never alleged, let alone

proven at Key's trial, but they also were highly contested by Appellant.

As Appellant argued at sentencing, the PSR, at multiple points, contained

erroneous facts, made unsupported inferences from those facts, and then falsely

attributed responsibility for Mathew Allen's murder to Appellant. For instance, in

paragraph 27, the PSR draws unsubstantiated inferences from out-of-context pieces of certain text messages sent between Babilonia and Key, connecting them to the alleged violent acts and firearms:

> In the thick of the plot and about a month before the November 16, 2011 attempt on Allen's life, Babilonia texted KEY and told him that she wanted to seal the deal. KEY immediately responded "K." KEY also gave Bab[i]lonia a firearm to keep at her home. In another coded text message, BABILONIA told KEY that she had stored "it" in the garage but would move "it" closer to her when Allen went to sleep.

(PSR ¶ 27).

As argued in Appellant's June 16, 2014 objections to the Draft PSR (A. 275-76), a careful examination of the text messages sent between Babilonia and Key in October 2011 demonstrates that a more plausible inference is that the "it" Babilonia referred to was not a firearm, as the PSR purports, but a second cell phone, which Babilonia had used since August 2011 mainly to maintain her relationship with Key, which she kept secret from Allen. (A. 276).

Despite Appellant's objection and the absence of any corroborating evidence to support a finding that Babilonia possessed a firearm, the district court adopted the "factual" finding in the PSR, stating that based on the text messages, "a logical inference is that it was a firearm and not a cell phone." (A. 345).

Therefore, to the extent that the district court based its sentence determination on any unresolved and erroneous "facts" in the PSR, purporting to

demonstrate Appellant's involvement in a murder-for-hire conspiracy, the ultimate sentence was the result of procedural error.

### ii.    The Superseding Information

It is entirely unclear from the district court's conflicting statements at sentencing whether, and to what extent, the district court relied on the statutory language referred to in the Information.  Although the federal stalking statute, 18 U.S.C. § 2261A, sets forth a series of alternative mental states, including the intent to kill, injure, harass, or intimidate, the Government charged Appellant in the Information with conspiring to stalk Allen simply "with intent to harass or intimidate."  (A. 33).  The district court acknowledged as much at sentencing:  "the statute doesn't require to kill; it's injure, harass, place under surveillance with intent to injure, harass, or intimidate.  I've left out the 'kill' part because there are alternatives, and this is disjunctive, not conjunctive."  (A. 318).  While the Information does indeed track the text of 18 U.S.C. § 2261A(i), the manner and means section of the Information refers only to Babilonia's "intent to harass … or intimidate," (A. 33); and the overt acts section of the Information accuses Babilonia only of traveling between New Jersey and New York to meet with a co-conspirator, and sending a picture via cellphone of Allen to a co-conspirator.  (A. 33).  Neither the plea agreement nor Appellant's allocution substantiate a finding that Appellant admitted to conspiring to stalk Allen with anything more than an

intent to harass and intimidate him. The district court, however, after "find[ing] that [Appellant] played a significant role in the plan to stalk and murder Matthew Allen," (A. 354), read the full statutory language from the Information, including "intent to kill," and then erroneously stated "that's the statute that she is being found – that she pled guilty [to]. So it encompasses that conspiracy; the statutory language itself encompasses that conspiracy." (A. 356-57); *see also* (A. 304) (indicating court's concern regarding "[Appellant's] intent to kill, injure, harass, and place under surveillance Matthew Allen, with the intent to kill injure, harass, or intimidate him. That's the conspiracy; that's the stalking."). As the extent of the district court's reliance on the statutory language in the Information is at best unclear, the court's decision to impose an upward departure, if not plain error, was again procedurally unreasonable.

### iii. Evidence from Trial of Co-Defendant Roger Key

Early in the sentencing hearing, the district court noted its concern "about the evidence [ad]duced at the trial of Roger Key and the other evidence in these submission[s] in regard to [Appellant's] participation in a conspiracy." (A. 304). The trial of Roger Key was held before the district court from March 17, 2014, through April 2, 2014. The very next day, on April 3, 2014, the district court notified the Government and Appellant of its intention to impose an upward departure against Babilonia from the sentencing guidelines and requested "all

evidence adduced at the trial of Roger Key relating to [Appellant's] participation"
in the murder-for-hire conspiracy. (A. 65). Much of the trial evidence, however,
as Appellant averred and the court "largely agreed" at sentencing, came from the
testimony of co-conspirators regarding what Key had told them in his words, rather
than any conversations they had with Appellant regarding her alleged intentions
and level of participation. (A. 318-20). Furthermore, as the district court pointed
out, "[Appellant] was not a participant in the trial," and thus had no opportunity to
challenge and cross-examine the testimony of witnesses which purportedly
implicated her in the murder-for-hire conspiracy. (A. 319).

Notwithstanding the low evidentiary value of this evidence, the district court
gave it considerable attention in its ultimate determination of an upward departure
from the recommended Guidelines range:

> [E]vidence … [ad]duced at the trial of Mr. Key establishes that Ms.
> Babilonia played a significant role in the plot to murder Matthew
> Allen … [that] Ms. Babilonia is certainly not a minor participant in
> this conspiracy to stalk…. In short, she continued to participate in the
> conspiracy, in fact, the conspiracy to injure or murder Allen.

(A. 352-53). This evidence adduced at Key's murder-for-hire conspiracy trial, and
the district court's reliance on it at Appellant's sentencing, further conflates the
stalking conspiracy to which Appellant pleaded guilty and the murder-for-hire
conspiracy in dispute at Key's trial.

Therefore, given the confusion surrounding the basis of the district court's determination to depart upward, the sentence ultimately imposed by the district court was procedurally unreasonable. *See Juwa*, 508 F.3d at 700.

## POINT II

### Appellant's Sentence Should Be Vacated as Unreasonable and the Case Remanded for Re-Sentencing Due to the District Court's Erroneous Denial of an Evidentiary Hearing Regarding Contested Facts in the PSR

### A.    Standard of Review

While there is no limitation on information concerning a defendant's background, character and conduct that a court may consider for the purpose of imposing an appropriate sentence, *see generally* 18 U.S.C. § 3661, "there are distinct limits to this discretion, and they include a defendant's due process right to be sentenced based on accurate information." *Juwa*, 508 F.3d at 700; *see also United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011) (defendant must be "given an opportunity to contest the accuracy of that information"); *see also United States v. Rodriguez-Gonzalez*, 899 F.2d 177, 182 (2d Cir. 1990) ("consideration of [such] evidence [does not] offend due process, provided a defendant was given an opportunity to contest the accuracy of that information"); *United States v. Romano*, 825 F.2d 725, 728 (2d Cir. 1987) ("[d]ue process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the district court").

"When a defendant disputes material facts in his PSR, the sentencing court must either refuse to take those facts into account or hold an evidentiary hearing." *United States v. Morehead*, 375 F.3d 677, 679 (8th Cir. 2004). Under Fed. R. Crim. P. 32(c)(3)(D), the district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(c)(3)(D); *accord United States v. Williamsburg Check Cashing Corp.*, 905 F.2d 25, 29 (2d Cir. 1990) (requiring remand for re-sentencing where it was unclear whether district court relied on disputed allegations in presentence report). This Court has repeatedly emphasized the importance of complying with Rule 32(c), as "[t]his requirement not only protects the defendant's right to due process; it also helps clarify the record on appeal." *United States v. Garcia*, 900 F.2d 571, 574 (2d Cir. 1990).

Additionally, section 6A1.3(a) of the Guidelines requires that "[w]hen a dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information." U.S.S.G. § 6A1.3 (Commentary). The district court, here, abused its discretion in denying Appellant the opportunity to fully dispute the factual bases for the court's imposition of the statutory maximum sentence.

**B.    The District Court Improperly Denied Appellant's Request for a *Fatico* Hearing**

Following the district court's explanation of its sentencing determination based on the court's finding that "[Appellant] played a significant role in the plan to stalk and murder Matthew Allen," (A. 354), Appellant objected to the court's decision to depart upward and impose a 60-month sentence, without first holding a hearing, under *United States v. Fatico*, 603 F.2d 1053, 1059 n.9 (2d Cir. 1979), "to establish whether or not [Appellant] participated in a plan to bring about [Allen's] death." (A. 354). The court erroneously denied Appellant's request for a *Fatico* hearing to assess the accuracy of this disputed issue of fact.

The court's finding of Appellant's "significant role in the plot to murder" Allen (A. 352), to the extent that it was based on evidence adduced at the trial of Roger Key, was entirely improper absent a further evidentiary hearing. First, Appellant's alleged participation as well as her intent to participate in either the stalking conspiracy or the murder-for-hire conspiracy was not at issue in Roger Key's trial. Second, as the district court stated at sentencing, "[Appellant] was not a participant in [Key's] trial," (A. 319), and therefore had no opportunity to cross-examine witnesses or challenge the evidence which ostensibly implicated her in these crimes. Accordingly, a *Fatico* hearing was necessary to allow Appellant the opportunity to contest the accuracy of the evidence—as to (i) Appellant's alleged

32

"intent to kill" and (ii) her alleged "significant role in the plan to stalk and murder Matthew Allen"—which the district court relied upon at sentencing.

## POINT III

### The District Court Failed to Properly Consider Mitigating Factors Presented by Appellant at Sentencing Resulting in a <u>Substantively Unreasonable Sentence</u>

### A.    Standard of Review

Even if this Court finds that Appellant's sentence was procedurally reasonable, the Court "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," which includes an examination of the "totality of the circumstances." *Gall*, 552 U.S. at 51.  Under the "parsimony clause" of section 3553(a), it is the duty of the district court to "impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth" in 18 U.S.C. § 3553(a)(2).  *See United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010).  In analyzing substantive reasonableness, the district court must also consider the factors set forth in 18 U.S.C. § 3553(a), including, in relevant part:   "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the applicable Guidelines range, 18 U.S.C. § 3553(a)(4); the applicable policy statements, 18 U.S.C. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct," 18 U.S.C. § 3553(a)(6); and the directive that a sentence should be "sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2) ]," 18 U.S.C. § 3553(a), which deals with the purposes of punishment, such as deterrence, protection of the community, promotion of respect for the law, and rehabilitation of the offender. *See Dorvee*, 616 F.3d at 183; *United States v. Fairclough*, 439 F.3d 76, 79 (2d Cir. 2006).

This Court applies a three-part test when reviewing a departure. First, the Court determines whether the reasons articulated by the district court for the departure are "of a kind or a degree that may be appropriately relied upon to justify the departure." *United States v. Tropiano*, 50 F.3d 157, 162 (2d Cir. 1995); *see also United States v. Khalil*, 214 F.3d 111, 124 (2d Cir. 2000); *United States v. Williams*, 37 F.3d 82, 85 (2d Cir. 1994). Second, the Court examines whether the findings of fact supporting the district court's reasoning are clearly erroneous. *See, e.g.*, *Tropiano*, 50 F.3d at 162; *Williams*, 37 F.3d at 85. Finally, the Court reviews the departure for reasonableness, *see, e.g.*, *United States v. Deutsch*, 987 F.2d 878, 886 (2d Cir. 1993); *United States v. Campbell*, 967 F.2d 20, 26 (2d Cir. 1992); giving considerable deference to the district court, *see, e.g.*, *Tropiano*, 50 F.3d at 162; *Williams*, 37 F.3d at 85. In assessing reasonableness, the Court should "look[] to the amount and extent of the departure in light of the grounds for departing[,] ... [and] examine the factors to be considered in imposing a sentence

34

under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence." *Williams v. United States*, 503 U.S. 193, 203–04 (1992). "The key question is whether the reasons given by the district court ... are sufficient to justify the magnitude of the departure." *Khalil*, 214 F.3d at 124 (internal quotations omitted).

### B. The District Court Effectively Ignored Duress Evidence in Mitigation

In imposing sentence, the district court did not give proper consideration to the nature and circumstances of the offense and the personal history and characteristics of Appellant, given the longstanding domestic violence abuse suffered by Appellant at the hands of the alleged victim in this case, Matthew Allen. Before sentencing, Appellant submitted a court-ordered mitigation report[8] by Dr. Simone Gordon which chronicled the traumatic toll and severe impact that decades long physical abuse experienced as a child, and continuing as an adult, had on Appellant. Evidence from the mitigation specialist reflected that Appellant's history was indicative of battered woman's syndrome. (Expert Report at 35). Appellant's behavior demonstrated such extreme helplessness that Dr. Gordon

---

[8] *Cf. United States v. Cossey*, 632 F.3d 82, 88 (2d Cir. 2011) ("[W]here a psychologist's report cannot be squared with the court's own judgment of the defendant's culpability and the danger he poses to society, the court is free, in its discretion, to decline to rely on the psychologist's findings, so long as the court explains its basis for doing so.") (internal quotes and citations omitted).

indicated that Appellant exhibited a "passivity that … compromises healthy cognitive functioning and emotional health." *Id*. Nonetheless, the Government largely ignored the factual record of violence inflicted on Appellant, and the district court mainly adopted the Government's position.

The Government mischaracterized the domestic violence abuse suffered by Appellant in an attempt to portray her as a participant working alongside Roger Key in a scheme for vigilante justice. (A. 336). Furthermore, the Government did not isolate Appellant from the killing of Matthew Allen, despite the fact that Appellant pleaded guilty to the sole charge against her, a conspiracy to commit stalking, not the patently distinguishable offense of murder-for-hire. In so doing, the Government depicted Appellant as an insidious participant in a "methodical plot, that took multiple players" to kill Allen, even stating that "Ms. Babilonia could have taken several courses of action that would have not led to the shooting of [the victim] Mr. Gonzalez, and would not have led Matthew Allen to be in fear for his life." *Id.*

This unfortunate characterization of Appellant not only subjected Appellant to the district court's consideration of uncharged conduct not factually proven, but it also completely overlooked the fact that Appellant (a registered nurse herself) repeatedly sought help, through legitimate and lawful means, from the violent abuse she suffered at Matthew Allen's hands. Appellant obtained an order of

protection against Allen, filed a criminal complaint against him, went to counseling

and sought a work relocation as Allen frequently stalked her at her job.  (Expert

Report at 26-28, 30).  And yet, despite these efforts, Allen did not stop abusing her.

(Expert Report at 34).  The tragic irony of this case is that Appellant pleaded guilty

to a conspiracy to commit a stalking offense against a man who in fact stalked her,

and put her life, safety and well-being in grave danger for years.  Specifically,

Matthew Allen stalked, intimidated, physically and psychologically abused,

assaulted and finally raped Appellant.  (Expert Report at 29).  The Government

dismissed the mitigation evidence contained in Dr. Gordon's report under the false

assumption that the abuse suffered by Appellant did not put her at an immediate

risk, and did not excuse Appellant from the seriousness of the offense committed.

(A. 336).

  While the district court was free *sua sponte* to consider uncharged conduct

as grounds for an upward departure under U.S.S.G. § 5K2.21(1),[9] it also should

have recognized that the "defendant committed the offense because of serious …

---

[9] *Cf*. U.S.S.G. § 5K2.21(1), Dismissed and Uncharged Conduct (Policy Statement)
("The court may depart upward to reflect the actual seriousness of the offense
based on conduct (1) underlying a charge dismissed as part of a plea agreement in
the case, or underlying a potential charge not pursued in the case as part of a plea
agreement or for any other reason; and (2) that did not enter into the determination
of the applicable guideline range.").

duress under circumstances not amounting to a complete defense." U.S.S.G. §

5K2.12 (Policy Statement). The offense committed by Appellant should have been

judged not only by the seriousness of the crime she admitted to, but also on the

"reasonableness of the defendant's actions" and the proportionality of those

actions, when viewed in context. *Id.* The policy statements referenced above

largely counteract one another, and thus in this case cancel each other out.

Accordingly, the sentence that the district court imposed was substantively

unreasonable.

The section 3553(a) factors also provide that the sentence imposed should

afford the defendant with needed medical care or other correctional treatment in

the most effective matter. *See* 18 U.S.C. § 3553(a)(2)(D). Dr. Gordon's expert

report offered a professional assessment of the impact of the domestic abuse

suffered by Appellant on her mental health. (Expert Report at 2-3, 35). A

sentence of 60 months' imprisonment dramatically hinders and delays Appellant's

ability to obtain the care needed to address the violent and abusive circumstances

she has endured for so long. The district court, at sentencing, merely paid lip

service to Babilonia's chronic history of mental and physical domestic abuse.

The district court largely ignored the factual record contained in Dr.

Gordon's report and imposed the statutory maximum sentence – equivalent to an

upward departure of at least five (5) offense levels. Furthermore, as Appellant was

a Category I offender with no prior criminal history, the district court's drastic

upward departure, from thirty-seven months at the top of the recommended

guidelines range to the maximum statutory sentence of sixty (60) months, was

entirely anomalous. *Compare* 28 U.S.C. § 994(h) ("[t]he [Sentencing]

Commission shall assure that the guidelines specify a sentence to a term of

imprisonment *at or near the maximum term* authorized for categories of

defendants" who are "career offenders," as defined by statute and under the

Guidelines) *with* 28 U.S.C. § 994(i)(1) ("[t]he [Sentencing] Commission shall

assure that the guidelines specify a sentence to a *substantial term* of imprisonment

for categories of defendants" who, for example, have two or more prior felony

convictions) *and* 28 U.S.C. § 994(j) ("[t]he [Sentencing] Commission shall insure

that the guidelines reflect … the general appropriateness of imposing a *term of*

*imprisonment* on a person convicted of a crime of violence that results in serious

bodily injury") (emphasis added).

     Generally, for upward departures under § 5K2.0, courts "should consider the

next higher [offense] levels in sequence to determine if they adequately reflect the

seriousness of the defendant's conduct." *United States v. Kim*, 896 F.2d 678, 683-

85 (2d Cir. 1990); *accord United States v. Campbell*, 967 F.2d 20, 25-27 (2d Cir.

1992); *United States v. Pergola*, 930 F.2d 216, 220 (2d Cir. 1991). "[F]or § 5K2.0

departures, the district courts need not make talismanic reference to the *Kim*

procedures, so long as there is careful explanation in the record of the reasons for the extent of the departure." *Campbell*, 967 F.2d at 25-27. The district court, here, did not employ the sequential consideration of the next offense level up, suggested by this Court in *Kim*, nor did the district court carefully and clearly explain its reasons for the court's considerable departure.

The district court's imposition of a sixty (60) month sentence was far greater than necessary to satisfy the Guidelines' goals of punishment and deterrence, failed adequately to account for Appellant's history and the nature of the offense, and was anathema to the Commission's objective of avoiding unwarranted sentencing disparity and of avoiding sentences at the statutory maximum absent a severe criminal history or substantial aggravating circumstances. Therefore, the district court's sentence was substantively unreasonable.

## **CONCLUSION**

For the foregoing reasons, Defendant-Appellant Babilonia respectfully submits that her sentence should be vacated as unreasonable and the case remanded to the district court for re-sentencing.

Dated:  New York, New York
      April 14, 2015

                      Respectfully submitted,
                      FOX ROTHSCHILD LLP

              By:  /s/ Robert W. Ray_____
                      Robert W. Ray
                      100 Park Avenue, Suite 1500
                      New York, New York 10017
                      (212) 878-7900
                      *Attorneys for Defendant-Appellant*
                      *Aisha Babilonia*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 9,097 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: New York, New York
April 14, 2015


_____/s/ Robert W. Ray_____
ROBERT W. RAY

# SPECIAL APPENDIX

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Judgment, entered September 22, 2014 ..................... SPA-1

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| AISHA BABILONIA | Case Number:  01:12-Cr-00712-19 (SHS) |
| | USM Number: 69450-054 |
| | Robert W. Ray |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)   One in the (S10) Information

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 371 | Conspiracy to Commit Stalking | 12/31/2011 | 1 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   Underlying Indictments   ☐ is   ☑ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/22/14

9/8/2014
Date of Imposition of Judgment

Signature of Judge

Sidney H. Stein, U.S. District Court
Name and Title of Judge

September 22, 2014
Date

SPA-2

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  2  of  6

DEFENDANT:  AISHA BABILONIA
CASE NUMBER:  01:12-Cr-00712-19 (SHS)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

60 months

☑ The court makes the following recommendations to the Bureau of Prisons:

That defendant be incarcerated in the tri state area to facilitate visits with her family who live in the tri state area.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at  _____  ☐ a.m.  ☐ p.m.  on  _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on  _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

a  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
        Sheet 3 — Supervised Release

Judgment—Page   3   of   6  

DEFENDANT:  AISHA BABILONIA
CASE NUMBER:  01:12-Cr-00712-19 (SHS)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

      **Three years.**

      The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check, if applicable.)*

☑   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  *(Check, if applicable.)*

☑   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence.  *(Check, if applicable.)*

      If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

      The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Case 14-3739, Document 51, 04/14/2015, 1484881, Page55 of 57

SPA-4

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
            Sheet 3C — Supervised Release

Judgment—Page  4  of  6

DEFENDANT:  AISHA BABILONIA
CASE NUMBER:  01:12-Cr-00712-19 (SHS)

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall participate in a mental health program approved by the U.S. Probation Office.  The defendant shall continue to take any prescribed medications unless otherwise instructed  by the health care provider.  The defendant shall contribute to the costs of services rendered not covered by third party payment, if the defendant has the ability to pay.  The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

The defendant shall submit her person, residence, place of business, vehicle, or any other premises under her control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to a search may be grounds for revocation.  The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The defendant shall serve 160 hours of community service during each year of her supervised release.  The community service shall be coordinated by the Probation Office.  The Court recommends that the defendant use her nursing skills at a not for profit institution during her community service.

SPA-5

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
            Sheet 5 — Criminal Monetary Penalties

Judgment — Page    5    of    6

DEFENDANT:  AISHA BABILONIA
CASE NUMBER:  01:12-Cr-00712-19 (SHS)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **TOTALS** | $              0.00 | $              0.00 |  |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

     ☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

SPA-6

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

Judgment — Page    6    of    6

DEFENDANT:  AISHA BABILONIA
CASE NUMBER:  01:12-Cr-00712-19 (SHS)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑ Lump sum payment of $ ___100.00___ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance    ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐ Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

C  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.